```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SANTOS GARCIA, IBAN GONZALEZ, and
HECTOR GOMEZ,

                              Plaintiffs,            MEMORANDUM DECISION
                                                     AND ORDER

              -against-                              20-CV-4691 (JMW)

GRANDPA TONY'S ENTERPRISES LLC d/b/a
GRANDPA TONY'S and JOSEPH
PASQUARETTO,

                              Defendants.
---------------------------------------------------------------X
```

**WICKS,** Magistrate Judge:

      Plaintiffs, employed as kitchen workers at Defendants' restaurant from approximately 2018 through March of 2020, brought this action alleging they are entitled to recover unpaid minimum and overtime wages, liquidated and statutory damages, and attorney's fees and costs pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law, N.Y. Lab. Law ("NYLL"), and the Wage Theft Prevention Act ("WTPA"). (DE 1.) The parties litigated this dispute for approximately a year, and after two settlement conferences before the undersigned, they reached an agreement to resolve the matter (DE 7/23/2021; DE 7/26/2021.) Before the Court is Plaintiffs' Motion (DE 21) for approval of the parties' settlement agreement. [1]

## BACKGROUND

      Plaintiff Garcia alleges he regularly worked up to 60 hours per week, Plaintiff Gonzalez alleges he worked up to 75 hours per week, and Plaintiff Gomez alleges he regularly worked 69

---

[1] Although Plaintiffs submitted the present motion, the Court construes the motion as a joint application of both parties.

1

hours per week. (DE 1.) Plaintiffs further assert that they were regularly paid at a straight-time rate, and Plaintiff Gonzalez was initially paid a fixed weekly salary, resulting in Defendants failing to pay Plaintiffs overtime wages at 1.5 times their regular hourly pay rate. (*Id*.) Plaintiff Gonzalez also asserts that in 2020, he was paid $1.00 below the statutory minimum wage rate for Long Island at that time. (*Id*.)  Plaintiffs contend that Defendants paid them by check for the first 40 hours they worked each week, and by cash for hours worked over 40, that Defendants did not provide "spread-of-hours" pay on days that their shifts lasted over ten hours, and that Defendants failed to give them accurate wage notices and wage statements. (*Id*.)  Defendants denied all such allegations. (DE 12.)

The parties reached an agreement to resolve the case on July 23, 2021. (DE 7/21/2021; De 7/23/2021.) Having potentially avoided the burdens and expenses of trial, Plaintiffs now move, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement.

## **STANDARD FOR APPROVING FLSA SETTLEMENTS**

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A). In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of

2

social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Factors weighing against settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically,

3

courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's to be paid by the defendant, and costs of the action.") (emphasis added); *see also Ceesae*, 2018 6 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

## DISCUSSION

*Settlement Agreement*

Nearly a year after Plaintiffs filed the complaint against Defendants, the parties achieved a proposed resolution. The resolution is embodied in a settlement agreement ("Agreement") that was signed on August 27, 2021. (DE 21, Ex. 1.) If approved, Defendants would pay, in exchange for dismissal of the suit, and without any admission of liability, a total of $50,000, paid in 11 monthly installments to the Plaintiffs. (*Id*.) Plaintiffs Garcia and Gomez would each receive a total of $8,844, and Plaintiff Gonzalez would receive a total of $15,300. (*Id*.) The payments would commence on September 1, 2021 or within seven days of Court approval of the Settlement Agreement, whichever is later. (*Id*.) The $50,000 reflects the total of the individualized payments to three plaintiffs and the attorney's fees and costs for the Pechman Law Group PLLC ($17,012 including the $522 of costs incurred for filing and service of the Complaint and summonses). (*Id*.)

The Agreement also states that Plaintiffs "waive, release, satisfy, and discharge" Defendants from any claims that could have been brought in the action at hand, including, but not limited to, those for "unpaid salaries, minimum and/or overtime wages, and hours worked." (*Id*.) Excepted from the release is any claim or right that cannot be waived by law, including those claims arising after the date of this Agreement. (*Id*.) Plaintiffs also represent and warrant that they have not filed any claims or causes of action against the Defendants excluding the Action and Claims asserted here. (*Id*.) The Agreement requires that the individually named Defendant execute a Confession of Judgment that provides for liquidated damages of $15,000 and acceleration of all unpaid amounts due, plus interests and costs, if Defendants fail to cure a default within a seven-day notice to cure period. For the reasons set forth below, the Court finds the terms of the proposed settlement agreement acceptable.

Reasonableness

Having reviewed the submissions, including the Settlement Agreement and Release containing the Stipulation and Order of Dismissal with Prejudice and the Affidavit of Confession of Judgment on Behalf of Defendants, and Plaintiffs' counsel's invoice for services rendered, the Court finds that the five *Wolinsky* factors weigh in favor of approval.

*First*, the Agreement provides for a total payment of $50,000, approximately two-thirds of which will be paid out to the Plaintiffs. Defendants claim that Plaintiffs may, at most, be owed $25,000 for wage damages, wage statement and wage notice violations under the WTPA. (DE 21.) Accordingly, the total recovery set out in the parties' agreement is double Defendants' damages calculation, and clearly greater than $0.00, which is a possibility if the parties proceeded to trial and Defendants prevailed. Thus, $50,000, two-third of which will be paid out to compensate Plaintiffs, is fair and reasonable in light of the risks of proceeding with discovery and

going to trial.

*Second*, settlement allows the parties to avoid extending litigation and the inevitable burdens and expenses in preparing parties' claims and defenses. Additional time spent conducting discovery, drafting documents, researching issues, and maintaining communications with opposing counsel would undoubtedly generate greater expense and delay.

*Third*, the parties face significant litigation risk if they proceed to trial. There are *bona fide* disputes as to Plaintiffs' wages. Notably, Defendants produced timecards and paystubs to support their position, and Plaintiffs claim that the records are not accurate and were altered. (DE 1; DE 12; DE 21.). Accordingly, a trier of fact may find Defendants' arguments and records accurate, and thus Plaintiffs stand to potentially not recover any damages at all if this case proceeded to trial. (DE 21.) Therefore, settlement is an effective measure to avoid the significant risk associated with litigating these issues.

*Fourth*, the parties engaged in months of discovery exchanges and appeared at the settlement conference before the undersigned, ardently advocating for their clients. (DE 7/23/2021; 7/26/2021). During the July 23, 2021 settlement conference, the parties reached an agreement in principle and they continued to confer with their clients and again with each other and the Court on July 26, 2021, to solidify the details of the settlement. (*Id*.) Thus, the parties clearly demonstrated arms-length bargaining on both sides.

*Fifth*, the parties, as represented by counsel, amicably negotiated in good faith, and agreed upon the terms found within the Agreement. (DE 21, Ex. 1.) Accordingly, there is no inclination, nor suggestion to the Court, that the settlement is a product of fraud, coercion, or collusion.

Moreover, the *Wolinsky* factors that weigh against approval of a settlement do not compel a rejection of the proposed settlement in this case. First, although the record is silent as to whether

6

there are additional kitchen workers employed by Defendants facing hour/wage discrepancies, it is likely that if these individuals were to exist, that they would have joined this action with their colleagues.  Nonetheless, this settlement is for Plaintiffs alone and will not prejudice any other former employee of Defendants from pursuing a claim against Defendants in the future. Second, the presence of this disputed issue, and the costly and time-consuming process it has been, should deter the Defendants from tampering with employees' hours and wages – as alleged by Plaintiffs. Next, it is unlikely that the claimant's circumstances will recur as they are no longer Defendants' employees, and regardless, the release provides that claims arising after the date of the Agreement are excepted from the release.  Last, although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement.

Finally, the proposed Agreement does not contain any of the problematic provisions outlined in *Cheeks*. First, the Agreement does not contain a confidentiality provision. Second, although the Agreement does contain a release (DE 21, Ex. 1 at 4), the release is not "overbroad." The release is aimed at preventing repetitive future actions arising out of claims which have already been asserted here, such as minimum/overtime wages and unpaid salaries.  The release specifically states that, "Excepted from this release is any claim or right that cannot be waived by law, including claims arising after the date of this Agreement (including claims to enforce this Agreement)." (*Id.*)  Further, as, discussed more fully below, Plaintiffs' counsel has provided documentation supporting the proposed attorney's fees. The Court therefore finds that the terms of the proposed settlement agreement are fair and reasonable.

7

Attorney's Fees

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Here, Plaintiffs' counsel requests $17,012, which includes the attorneys' fees and costs incurred throughout the settlement process, the $400.00 filing fee and $122.75 service for the Complaint and summonses. (DE 21, Ex. 2.) This value is $345.00 over the exact one-third mark, but nevertheless reasonable under the percentage method.

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary

8

for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Plaintiffs' lodestar calculation is $29,057. (DE 21, Ex. 2.) Accordingly, the lesser one-third fee that Plaintiffs' counsel is requesting is fair and reasonable compared to the lodestar cross-check.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion for approval of the settlement agreement is GRANTED. Accordingly, Plaintiffs' claims are DISMISSED WITH PREJUDICE, in their entirety. The Court shall enter separately the executed Stipulation of Dismissal with Prejudice and will direct the Clerk's Office to close this case.

Dated: Central Islip, New York
October 25, 2021

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

9